**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JAMES ROBERTSON,

         Plaintiff,

v.                                                            CIVIL ACTION NO. 3:05-0777
                                                             (Consolidated with case numbers 3:06-374-376)
TODD ELLIOTT, in his individual
and official capacity as a police officer, et al.,

         Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Defendants' Renewed Motion for Summary Judgment (Doc. 134). For the reasons explained below, the Court **DENIES** the motion.

**Factual and Procedural Background**

This case comprises seven related lawsuits filed against the Wayne County Sheriff's Department ("the Department") and its employees based on the Department's employ of confidential informant, Tom Osborne. The details of the case are well known to the parties, and were previously summarized by this Court in its July 18, 2008 Order denying the Defendants' original Motion for Summary Judgment. (Doc. 123, hereinafter, "July 18th Order"). Relevant factual and procedural background is recounted below.

Officers met Tom Osborne at a bar in Wayne County, West Virginia on May 9, 2003. During their initial meeting, Osborne offered to act as a confidential informant and make controlled drug buys for the Department. Officers took him up on that offer and had him conduct a controlled purchase that very evening. Lab results confirmed the presence of drugs from these initial buys. Apparently satisfied, the Department used him on a number of subsequent transactions – estimated

around thirty-one – resulting in the arrest and indictment of twenty-nine individuals, including each of the plaintiffs.

It appears that most, if not all, of the controlled buys conducted by Osborne, after that first night, were staged. At the beginning of a buy, Osborne would take money from officers and conceal it in a space cut out of his flip-flops for such a purchase. He would stage a drug purchase outside of the presence of the officers (on a few occasions he even fabricated voices on tape). Osborne would then hand the officers a mixture of baking soda, sheet rock, and Anbesol, devised to look like a controlled substance (the Anbesol was included to register as a controlled substance during a field test). Finished with the controlled buy, Osborne would then take the money given him and make purchases of real drugs, which he consumed. The fake drugs supplied by Osborne were then used to justify the above-mentioned twenty-nine arrests and indictments.

Osborne's fabrication of evidence was not discovered for some time because of a backlog at the West Virginia State Police Forensic Laboratory. According to the Wayne County Prosecutor who handled these cases, Jim Young, the lab is so far behind in their work that they frequently do not conduct testing until a court establishes a trial date. As a result, the Department pursued arrests and indictments based on Osborne's fake evidence without the benefit of lab results. Only after arrests were made and indictments returned did the fraudulent nature of the transactions surface. After that the prosecution dropped all charges against the plaintiffs.

The plaintiffs originally complained of numerous violations of federal and West Virginia state law based on the Department's employ of Osborne as a confidential informant. They claimed that oversight of Osborne was lax to the point to the point of a constitutional violation, and constituted negligence on the part of the Defendants. Defendants filed an initial motion for summary

judgment on both federal and state claims, citing qualified immunity from suit. They argued that qualified immunity was appropriate on state and federal claims because the arrest and detention of each of the plaintiffs was conducted pursuant to warrants issued by Wayne County Circuit Judge Darrell Pratt, and indictments returned by Wayne County grand juries.

In a Memorandum Opinion and Order dated July 18, 2008, the Court rejected Defendants' arguments for qualified immunity from both federal and state law claims. *See generally,* July 18th Order.  Following this Court's denial of summary judgment, Defendants filed an interlocutory appeal. This Court stayed all relevant deadlines, until the appeal could be heard.  On March 6, 2009, the court of appeals issued and opinion reversing the decision of this Court on its denial of summary judgment on the plaintiffs' federal claims.  *Robertson v. Elliot*, No. 08-1839, slip op. (4th Cir. Mar. 6, 2009).  The appellate decision did not address this Court's decision on the plaintiffs' state law claims.  As a result, the plaintiffs' claims for state law negligence remain pending.[1]

Following the Fourth Circuit's issuance of a mandate on Defendants' appeal, the Defendants filed a motion renewing their request for summary judgment.  The motion again argues that the Court should grant qualified immunity from state law negligence claims based upon the warrants and indictments issued regarding each of the plaintiffs.  Defendants additionally argue that each of the plaintiffs' cases, excepting the one filed by Mr. James Robertson, were filed outside the applicable statute of limitations and should be dismissed as time-barred.  The Court addresses each ground for summary judgment below.

---

[1] While the appellate decision did not specifically address the plaintiffs' West Virginia constitutional claims, it is dispositive on those issues.  This Court previously held that the state constitutional claims would be judged on the same standard as the federal claims.  *See* July 18th Order.  The reasoning of the Fourth Circuit applies to the state constitutional claims as well as the plaintiffs' federal claims.

## Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. "Genuine issues of material fact cannot be based on mere speculation or the building of one inference upon another." *Barwick v. Celotex Corp.* 736 F.2d 946, 963 (4th Cir. 1984).

**Discussion**

I.     **The Court Sees No Reason to Reverse Its Prior Decision Regarding Qualified Immunity for Plaintiffs' State Law Negligence Claims.**

Although the Fourth Circuit Court of Appeals reversed this Court's decision to deny summary judgment to the Defendants on the plaintiffs' constitutional claims, the appellate decision has little bearing on the plaintiffs' state law negligence claims.  The Fourth Circuit did not directly address those claims, nor is its rationale for summary judgment on constitutional claims applicable to the claims of negligence.  In order to understand the implications of the Fourth Circuit ruling it is necessary to review both this Court's prior opinion and the appellate decision.

In its first decision denying summary judgment to the Defendants, this Court held that warrants and indictments issued through West Virginia proceedings were inadequate to confer qualified immunity upon the Defendants. *See generally,* Sept. 18th Order.  The Court noted the existence of a constitutional right, rooted in the Fourteenth Amendment "not to be deprived of liberty as the result of fabrication of evidence by a government official acting in an investigatory capacity." *Id* at 8. (quoting *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005).  It then noted the under the precedent established in *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978), a supervisory government official could be held liable for acts of a subordinate *if* "supervisory indifference or tacit authorization of [that] subordinate's misconduct [was] a causative factor in the constitutional injuries." *Id* at 8-9. (quoting *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001).  Although it recognized that the plaintiffs would "face a high hurdle at trial," the Court concluded that a material fact existed as to whether the Department, and its employees, were deliberately indifferent to such an extent that they played a causative role in the fabrication of evidence. *Id.* at 9.  The Court rejected the argument for qualified immunity based on warrants and

-5-

indictments, reasoning that these instruments protected individuals from the right to be free from arrest and prosecution without probable cause; a right distinct from the right not to be deprived of liberty based on fabricated evidence. *Id.* at 7-9.

This Court's first opinion also addressed the Defendants' arguments for immunity from state law claims. It recognized a West Virginia statutory provision grants immunity from actions of government officials conducted pursuant to a court order. *Id.* at 13 (quoting W. Va. Code § 29A-12A-5(a)(3)). But, the Court reasoned, the statutory immunity was inapplicable because "the plaintiffs' state tort claims . . . arise from the hiring and supervision of Osborne as a confidential informant and his subsequent fabrication of evidence. These acts were not conducted pursuant to any court order." *Id.*

In an unpublished, *per curium* opinion the Fourth Circuit reversed the decision of this Court as it pertained to the plaintiffs' constitutional claims. *Robertson v. Elliot*, No. 08-1839, slip op. (4th Cir. Mar. 6, 2009). The Fourth Circuit first held that *Monell* is applicable only to determine whether a government entity is sufficiently responsible for a constitutional violation to be held liable: "*Monell* does not bear on whether there has been a constitutional violation in the first place." *Id.* at 9. Because this Court had relied on *Monell* to establish the existence of a constitutional violation, the decision was reversed. The Fourth Circuit also determined, on the facts recited by this Court, that there was nothing to suggest that officers were "*reckless* with respect to the falsity of evidence offered by Osborne." *Id.* (emphasis added). Rather, the plaintiffs' claim "at bottom" was one for acts of negligence – insufficient to support a constitutional violation. *Id.* Finding that no constitutional violation had occurred, the appellate court did not address arguments for qualified

immunity based on the warrants and indictments.  Neither did the appellate decision mention the plaintiffs' state law negligence claims.

While the Court is bound by the decision of the Fourth Circuit Court of Appeals on the plaintiffs' constitutional claims, the decision does not affect this Court's prior ruling on the plaintiffs' negligence claims.  First and foremost, it did not address the negligence claims, although they were previously discussed by this Court.  As such, the Fourth Circuit knowingly left those claims pending.  Additionally, the rationale of the appellate court is inapplicable to the negligence claims.  The Fourth Circuit decision only discussed the constitutional standard, which is higher than the standard for common law negligence.  Consequently, the intervening appeal has done nothing to affect this Court's earlier determination that summary judgment should not be granted to Defendants on the plaintiffs' negligence claims.  The Court **FINDS** that the provision of the West Virginia Government Claims and Insurance Reform Act granting immunity  from "execution or enforcement of the lawful orders of any court" does not apply to the present case.  W.Va. Code § 29-12A-5(a)(3).

**II.    The Discovery Rule Acted to Toll the Applicable Statute of Limitations Until the Plaintiffs Became Aware of Conduct Leading to the Fabrication of Evidence Used Against Them.**

Defendants argue that the claims of each plaintiff, save James Robertson, are barred by the applicable statute of limitations.  Dates relevant to this inquiry include the following.  The plaintiffs were each arrested by the Department on June 13, 2003.  On June 8, 2004,the Wayne County Prosecutor's office dismissed charges against Plaintiffs Evans, Landon Hatfield, Shannon Hatfield, Lucas, and Marcum.  On June 6, 2005, charges against Plaintiff Robertson was dismissed. Robertson filed his complaint on September 20, 2005. On February 22, 2006, the Circuit Court of

Wayne County, West Virginia held a hearing to consider Tom Osborne's guilty plea.  At this

hearing, Osborne admitted to the fabrication of evidence used against the plaintiffs in this action.

On May 17, 2006, Plaintiffs Cook, Evans, Landon Hatfield, Shannon Hatfield, Lucas, and Marcum

filed their complaints with this Court.

      Parties agree that the provisions of West Virginia Code § 55-2-12 state the applicable statute

of limitations.  This section provides,

> Every personal action for which no limitation is
> otherwise prescribed shall be brought: (a) Within two
> years next after the right to bring the same shall have
> accrued, if it be for damage to property; (b) within
> two years next after the right to bring the same shall
> have accrued if it be for damages for personal
> injuries; and (c) within one year next after the right to
> bring the same shall have accrued if it be for any
> other matter of such nature that, in case a party die, it
> could not have been brought at common law by or
> against his personal representative.

W.Va. Code § 55-2-12.  To apply this section, the Court must first determine when the right to bring

an action first accrued.

      Under West Virginia law a claim for negligence must assert "[1] that the defendant owes him

a duty, [2] that there was a negligent breach of that duty, and [3] that injuries received by the

plaintiff resulted proximately from the breach of that duty." *Webb v. Brown & Williamson Tobacco*

*Co.*, 2 S.E.2d 898 (W.Va. 1939).  On June 13, 2003, at the time of their respective arrests, each of

the plaintiffs had a viable claim against the defendants.  The alleged negligent supervision and hiring

of Osborne had occurred, giving rise to the duty and breach element of their claims.  Fabricated

evidence had been used to obtain warrants for their arrests – giving rise to the causation element of

their claim.  Finally, at the moment of the arrest, they suffered from a compensable harm.  Under

the terms of the statute the right to bring action thus, accrued on June 13, 2003.  Because none of

the plaintiffs, except Robertson, filed within two years of this date, most of the plaintiffs' claims are

potentially time-barred.  The pertinent question becomes whether there is some principle which

would serve to toll the statute of limitations.

Under West Virginia law the discovery rule acts as an equitable doctrine which can serve

to toll the statute of limitations.  Pursuant to the discovery rule, a statue of limitations will not begin

to run until,

> the plaintiff knows, or by the existence of reasonable
> diligence should know (1) that the plaintiff has been
> injured, (2) the identity of the entity who owed the
> plaintiff a duty to act with due care, and who may
> have engaged in conduct that breached that duty, and
> (3) that the conduct of that entity has a causal relation
> to the injury.  This rule tolls the statute of limitations
> until a plaintiff, acting as a reasonable, diligent
> person, discovers the essential elements of a possible
> cause of action, that is, discovers duty, breach,
> causation, and harm.

*Gaither v. City Hosp. Inc.*, 487 S.E.2d 901, 909 (W.Va. 1997).  Because of the discovery rule, the

operable question then becomes whether the plaintiffs knew, or by reasonable diligence should have

known of the elements of their claim.

At the time of the plaintiffs' arrest they must have known they were injured because they

must have known they were innocent of the charges filed against them.  At the same time, they knew

that officers from the Wayne County Sheriff's Department had arrested them, and should have

known that the officers owed them a duty of care.  What they did not know, and could not have

known at the time of their arrest, was information related to a breach of duty or the causal relation

of this breach to their injuries.  Not every arrest of an innocent person is, after all, the result of police

negligence.  It was only after Osborne's plea that the defendants in this case would have been aware of his fabrication of evidence and been put on notice to investigate the Department's conduct in employing Osborne.[2]  It was upon this date, February 22, 2006, that each of the plaintiffs were aware of the essential elements of their negligence claims, and upon this date the toll on the statute of limitations came to an end.  Because all of the plaintiffs filed their claims well within two years of February 22, 2006, none of their claims is barred by the statute of limitations.

### Conclusion

For the reasons explained above, the Court **DENIES** Defendants' Renewed Motion for Summary Judgment (Doc. 134).  The Court previously held that the Defendants could not take advantage of qualified immunity based on warrants and indictments issued through West Virginia judicial to avoid common law negligence claims.  Although the Fourth Circuit Court of Appeals has reversed this Court's decision on the plaintiffs' related constitutional claims, it left this Court's decision on the negligence claims intact.  The Court stands by its prior reasoning.  Additionally, the Court **FINDS** that the plaintiffs' claims are not time-barred, because of the application of the discovery rule.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:          July 16, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[2]Even if the plaintiffs suspected that the drug evidence presented against them had been fabricated, they would have been precluded from pursuing this line  inquiry because of the backlog at the West Virginia State Forensic Laboratory.  The Department itself did not receive these results until  days before the plaintiffs' criminal cases were dismissed.